UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES | : |
| :--- | :--- |
| *v.* | : |
|  | : Criminal No. 14-0050(RC) |
| **JORGE PEREZ CAZARES,** | : |
| *Defendant.* | : |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S
### MOTION FOR GUIDELINE ROLE ENHANCEMENT

Defendant Jorge Perez Cazares, by and through undersigned counsel, respectfully submits his opposition to the government's motion for guideline role enhancement and states as follows:

### BACKGROUND

On April 1, 2024, Mr. Perez entered a plea of guilty to Count 1 of the indictment charging him with conspiracy to distribute five kilograms or more of cocaine knowing and intending that the cocaine would be imported into the United States, in violation of 21 U.S.C. § 959(a), 960 and 963, and 18 U.S.C. § 2. The guilty plea was not pursuant to a plea agreement.

As part of his guilty plea, Mr. Perez admitted to the following facts:

> On March 13, 2014, a federal grand jury returned an indictment charging Mr. Perez with conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, knowing and intending that the cocaine would be unlawfully imported into the United States, from in or around January 2010 to the date of the Indictment (March 13, 2014), in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B), and 963. The Indictment also carries a criminal forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970. On May 6, 2022, the government filed a motion to narrow the timeframe of the Indictment from January 2010 through March 13, 2014, to October 2013 through March 13, 2014, which the Court subsequently granted.

In or around 2013, law enforcement officers identified an independent drug trafficker in Guatemala who brokered deals with sources of supply for large quantities of cocaine to be moved through Mexico to final destinations that included the United States.

As law enforcement investigated the independent drug trafficker, they were led to Mr. Perez. This occurred when the independent drug trafficker introduced Mr. Perez to a Guatemala-based cooperating witness (CW-1)[1], a Guatemalan narcotics trafficker, who unbeknownst to the independent drug trafficker and Mr. Perez, was working for the United States Drug Enforcement Administration (DEA).

Mr. Perez first met with CW-1 in October 2013. He met with CW-1 multiple times in 2013 and 2014 regarding their planned narcotics trafficking venture. All of the meetings occurred in Guatemala and were recorded by CW-1 using surveillance equipment recommended to her by the DEA.

During those meetings, Mr. Perez believed that CW-1 could serve as a source of supply of cocaine for Mr. Perez, who negotiated a deal on behalf of his employers with CW-1 to purchase between 500 and 1000 kilograms of cocaine from her during the course of the meetings that occurred between October 2013 and February 18, 2014.

After their meetings, Mr. Perez and CW-1 agreed that Mr. Perez would purchase 500 kilograms of cocaine from CW-1. Mr. Perez made payment for that cocaine. CW-1 arranged for Mr. Perez to receive 500 kilograms of cocaine in Guatemala on February 22, 2014. On the same date, Guatemalan National Police arrested Mr. Perez driving a truck that contained the 500 kilograms of cocaine.

Mr. Perez acknowledges that the total amount of cocaine involved in the charged conspiracy was over 450 kilograms and that the cocaine was going to be illegally imported into the United States.

Mr. Perez agrees that his participation as a conspirator were in all respects knowing, intentional and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, or public authority.

Doc. # 62.

---

[1] CW-1 is Marllory Chacon Rossell.

At the change of plea hearing, the government notified the Court that it would seek an aggravating role enhancement at sentencing. The Court scheduled an evidentiary hearing to address the possible sentencing enhancements.

On June 13 and 14, 2024, the Court held the evidentiary hearing where the government presented the testimony of FBI Special Agent Jamie Dvorsky and cooperator Marllory Chacon Rossell in support of its motion for an aggravating role enhancement. The government informed the Court that it would seek a three-level enhancement for managerial or supervisory role, but that it believed that there "could be evidence that his role would rise to the level of a plus-4 leader." Tr. 3:17 – 4:4.

The government's motion for a sentencing enhancement for aggravating role is without merit and should be denied.

## **FACTS**

### I. **Testimony of FBI Special Agent Jamie Dvorsky**

FBI Special Agent Jamie Dvorky testified on June 13, 2024. Her testimony focused principally on Blackberry messages between Mr. Perez and Alfonso Limon Sanchez (aka "Chubas") intercepted pursuant to a Title III wiretap authorized by Judge M. James Lorenz of the Southern District of California. *See generally* Tr. 17:8 – 51:25. Special Agent Dvorsky also testified about multiple cocaine and currency seizures on February 17, 2014, in the Los Angeles area. *See generally* Tr. 58:6 – 69:17. Finally, she testified about the seizure of 500 kilos of cocaine in Guatemala City and the arrest of Mr. Perez on February 22, 2014. *See generally* Tr. 69:21 – 80:12.

### A. <u>Blackberry Intercepts</u>

With respect to the intercepted Blackberry communications, Special Agent Dvorsky's testimony on direct-examination consisted of identifying various exhibits and reading translations of their contents. On cross-examination, she testified that the communications from Mr. Perez to Chubas mainly consisted of Mr. Perez informing Chubas of what Mr. Perez was doing; of Mr. Perez asking Chubas what Mr. Perez should do; and of Mr. Perez asking Chubas for permission to do something. Additionally, the tone of the chats is that of an underling (Mr. Perez) being respectful of a superior (Chubas), whom he repeatedly calls "sir."

For example, with respect to Gov. Ex. 3, Special Agent Dvorsky testified:

> Q. And he starts by "Good evening, sir"; is that right?
> A. Yes.
> Q. So you can -- you can infer that by good evening, sir, he's just greeting him for the evening and using an honorific sir; correct?
> A. Correct.
> Q. Okay. And then the next line says, "Just so you're aware, they've already seen us"; correct?
> A. Yes.
> Q. And what did you interpret that line to mean?
> A. That they've already been served whatever had -- Chubas had -- in the previous conversation said was ready.
> Q. But it's also Mr. Perez informing Chubas that they've already been seen; correct?
> A. Yes.
> Q. Letting him know what's going on?
> A. Yes.
> Q. And if you go down to line 5, where it says, "Yes, sir. Just so you're aware, I'm leaving Monday at 6:00," that's also Mr. Perez informing Chubas of what his next move is? He's leaving on Monday at 6:00; correct?
> A. Correct.
> Q. Chubas isn't telling Mr. Perez Chubas what Chubas is doing; correct?
> A. Not there, no.
> Q. It's Perez telling Chubas what Perez is doing?
> A. Correct.
> Q. Okay. Keeping him informed?
> A. Yes.

Tr. 92:24 – 94:5.

Similarly, with respect to Gov. Exh 4, Special Agent Dvorsky testified:

> Q. Okay. And with respect to line 2, what did you interpret that to mean?
> A. That Cadete[2] is letting Chubas know that the person that they sold 106 to now has money waiting at the border and will have 200 more --
> Q. Right.
> A. -- the following day.
> Q. So, once again, it's – it's Mr. Perez informing Chubas of what's going on with whatever it is that they're doing; correct?
> A. Yes.
> Q. And then when -- the third line where it says, "And if we can front him 200 more, what do you think," isn't it accurate that Mr. Perez is asking Chubas if he can do something?
> A. He's asking for his opinion, yes.
> Q. Or permission; correct?
> A. Either. Yep.
> Q. Excuse me?
>
> A. Yes. Either, it could be.
> Q. Okay. And then in line 4, Chubas said, "Yes, sir, my buddy. Go ahead"; correct?
> A. Yes.
> Q. And it's fair to interpret that as saying that Chubas is giving Mr. Perez the authorization to go-ahead and do whatever it is that he asked about; correct?
> A. Correct.
> Q. And also in line 5 where it says, "Sir, also just so you know, I arrived here an hour ago," it's Mr. Perez, once again, informing Chubas of what -- what he's been up to; correct?
> A. Correct.

Tr. 94:6 – 95:16.

With respect to Gov. Exh. 5, Special Agent Dvorsky testified:

> Q. "How much are we selling to him for, sir"?
> A. Yes.
> Q. And that's Cadete asking Chubas how much to sell to some particular person; correct?
> A. Yes.
> Q. And Cadete says, "It's up to you," to Chubas; correct?
> A. Correct.
> Q. Basically asking him, again, it's up to you what we sell this for; correct?
> A. Correct.
> Q. And Cadete responds, "16,500 or whatever you say, my buddy." So he's telling -- he, Chubas, is telling Cadete how much to sell whatever it is they're

---
[2] Mr. Perez is also known as "Cadete."

5

> selling; correct?
> A. Correct.
> Q. And then in line 4, Cadete states, "I'm about to tell him here how much we're going to give it to him for, sir. That's why I wanted to ask you first"?
> A. Correct.
> Q. So Cadete is basically saying, I wanted to check with you first before I go ahead and do whatever it is that we're doing; is that right?
> A. Yes.
> Q. In line 6 Chubas says, "Yesterday. Go ahead, my buddy"; correct?
> A. Correct.
> Q. And that can be interpreted -- or you can interpret that as being Chubas giving Mr. Perez the go ahead to do what he asked for; right?
> A. Yes.

Tr. 95:17 – 96:26.

Regarding Gov. Exh. 17, Special Agent Dvorsky testified that Mr. Perez was specifically asking Chubas for permission to make payments in Guatemala for the cocaine shipment that was being negotiated with Marllory Chacon Rossell:

> A. Yes.
> Q. In line 2, Mr. Perez, Cadete, tells Chubas that he's at the meeting; correct?
> A. Yes.
> Q. And then in line 3, Mr. Perez tells Chubas that they're asking me if we can make payments once in a while here where I am too; correct?
> A. Yes.
> Q. And I think on direct examination, you indicated that -- you testified that that meant that someone was asking Mr. Perez whether payment could be made in Guatemala; correct?
> A. Correct.
> Q. And Mr. Perez is telling Chubas that to get authorization; correct?
> A. Yes.
> Q. And, in fact, in line 4, Chubas says, "Yes, sir, my buddy. We can send it to them over there"; correct?
> A. Yes.
> Q. And you interpreted that as Chubas giving Mr. Perez the authorization to make payments in Guatemala; correct?
> A. Yes, that they have the ability to.

Tr. 105:8 – 106:11.

In Gov. Exh. 18, Mr. Perez similarly asks Chubas for authorization to consummate a deal and Chubas gives his blessing:

> Q. And that he – he, Mr. Perez, was indicating to Chubas that they've agreed to pay for 1,000 kilos and get fronted 830 kilos on credit, correct?
> A. Correct.
> Q. And in line 7 he asks Mr. -- he asked Chubas -- Mr. Perez asked Chubas, "What do you think"; right?
> A. Yes.
> Q. Trying to get his input and his authorization about the deal; correct?
> A. Correct.
> Q. And, in fact, in line number 9, Chubas says, "Very good, my buddy. Go ahead"?
> A. Correct.
> Q. Once again, he gives Mr. Perez the authorization to go ahead and do the deal as he's described; correct?
> A. Correct.

Tr. 106:12 – 107:16. In these and other communications (Gov. Exhs. 2, 6 - 16, 19 - 29, it is evident that Mr. Perez is an underling of Chubas and that Mr. Perez is keeping Chubas informed of Mr. Perez's activities and asking Chubas for authorization to act, such as selling merchandise at a certain price or making payments in a certain place.

    **B.**  **Cocaine and Currency Seizures**

Special Agent Dvorsky also testified about the seizure of 74 kilos of cocaine and $1.4 million on February 17, 2014, in Riverside, California. Tr. 62:24 – 63:4. Relevant to the cocaine and currency seizures, she testified that Mr. Perez had provided a telephone number associated with the seizures to Chubas, but that she was not aware of any other evidence indicating that Mr. Perez had any connection to the seizures or that California group. Tr. 121:7 – 121:10; 135:3 – 135:13.

### C. Guatemala Seizure and Arrest of Mr. Perez

Special Agent Dvorsky further testified about the arrest of Mr. Perez and the seizure of approximately 500 kilos of cocaine in Guatemala City on February 22, 2014. According to Special Agent Dvorsky, Guatemalan authorities stopped a white panel truck and arrested the passenger (Max Medina) and the driver (Mr. Perez). A subsequent search of the truck uncovered the cocaine hidden in the cargo compartment of the truck. Tr. 71:3 – 73:25. She also testified that in her experience, a high-level person within a drug organization does not drive their own drugs. Tr. 123:19 – 123:23.

### II. Testimony of Marllory Chacon Rossell

Prior to her arrest and cooperation with the government, Marllory Chacon Rossell was a major Guatemalan money launderer and trafficker who was involved in the laundering of hundreds of millions of dollars and the distribution of tens of tons of cocaine. Tr. 230:2 – 230:11; 232:20 – 232:22. As a result of her cooperation, she served a mere 60 months of incarnation. Tr. 240:17 – 240:25.

Chacon Rossell testified about her involvement in setting up Mr. Perez by negotiating to sell him 500 kilos of cocaine in Guatemala. She testified that the man arrested with Mr. Perez (Max Medina) was a worker of Mr. Perez although she had never seen him and thus did not know him. Tr. 224:15 – 224:24. She testified that she had no knowledge of Mr. Perez or Medina having armed guards or of them being themselves armed at the time of their arrest. Tr. 256:10 – 256:15. She further testified that in her experience as a major drug trafficker she never personally transported drugs. Tr. 272:14 – 272:17.

Chacon Rossell further testified that Mr. Perez had told her that three offices in Los Angeles were seized and that Mr. Perez had mentioned a loss of 400 kilos and $3,000,000 as a result of those seizures. Tr. 206:13 – 207:10; Tr. 270:24 – 271:15. She also testified that Mr. Perez, as a "leader" would be well aware of any seizures that occurred at any of his offices. Tr. 271:16 – 271:20.

Chacon Rossell also testified that Mr. Perez had told Christian Leon that Mr. Perez would kill Chacon Rossell and her family. Tr. 257:4 – 257:7. She further testified that she told the government prosecutors, agents and her handler about the threats. Tr. 257:8 – 257:17; 260: 18 – 261:23. The government conceded that there is no memorialization of Chacon Rossell conveying any information about the threat, Tr. 257:24 – 258:1; that there is no corroboration of the threat, Tr. 259:17 – 259:19; and that there was no record of her ever telling the government about the threats. Tr. 291:22 – 292:11.

Chacon Rossell testified that she never met any of Mr. Perez's employees or his partners and that she had no knowledge of how Mr. Perez operates. Tr. 270:18 – 270:23. She further testified that the reason Mr. Perez wanted the kilos of cocaine to be delivered without a wrapping was so that he could count them one by one. Tr. 210:21 – 211:7; 272:1 – 272:4. She also testified that as a major trafficker she never counted each kilo one by one. 272:18 – 272:20.

### III. <u>Meisel Email</u>

Defense Exhibit 20 is an email from NDDS Trial Attorney Doug Meisel, a prosecutor on this case, to Justin Miller describing Mr. Perez as a "*Mexican broker* who was shopping for Guatemalan sources of supply for distribution into Southern California via Mexico." Def. Exh. 20; Tr. 115:7 – 116:16 (emphasis added).

### IV.     McGuire Affidavit

Defense Exhibit 21 is an Affidavit in Support of Request for Extradition sworn out by FBI Special Agent Eric McGuire, the lead agent in the investigation of Mr. Perez and who is familiar with the investigation. Tr. 118:25 – 119:6. Paragraph 9 of the Affidavit states that during the investigation, "Rossell had direct and first-hand dealings with PEREZ CAZARES and had knowledge of *PEREZ CAZARES's agreements to broker cocaine trafficking deals* with co-conspirators in Colombia, Guatemala and the United States. (emphasis added).

## ARGUMENT

Pursuant to U.S.S.G. § 3B1.1 (Aggravating Role):

Based on the defendant's role in the offense, increase the offense level as follows:

> (a)  If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b)  If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c)  If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. In applying this enhancement, courts should consider the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 (cmt. 4); *United States v. Bikundi*, 926 F.3d 761, 833 (DC Cir. 2019). No single factor is dispositive, but all defendants receiving the enhancement "must exercise some control over others." *United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir.2014) (quoting *United States v. Graham*, 162 F.3d 1180, 1185 (D.C. Cir. 1998)).  The government must demonstrate

that a sentencing enhancement is warranted by a preponderance of the evidence. *See United States v. Vega*, 826 F.3d 514, 538 (DC Cir. 2016). "Mere control over a scheme rather than over a *participant* in a scheme" is not enough to warrant an aggravating role enhancement. *Id.* (*citing United States v. Bapack*, 129 F.3d 1320, 1325 (DC Cir. 1997) (emphasis added). Accordingly, to justify the three-level managerial-role enhancement, the Government had to prove by a preponderance of the evidence that Mr. Perez (i) managed or supervised (ii) at least one "participant" who was criminally responsible for an offense (iii) in a criminal activity that involved five or more participants or was otherwise extensive. *Vega*, 826 F.3d at 539. A defendant's role as an organizer or leader under U.S.S.G. § 3B1.1 is a factual finding that is reviewed for clear error. *See United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).

### I. Chacon Rossell's Testimony is Not Credible

Chacon Rossell testified that Mr. Perez had conveyed death threats to her and her family through Christian Leon. Tr. 257:4 – 257:7. She further testified that she told the government prosecutors, agents and her handler about the threats. Tr. 257:8 – 257:17; 260: 18 – 261:23. The government conceded that there is no memorialization of Chacon Rossell conveying any information about the threat, Tr. 257:24 – 258:1; that there is no corroboration about the threat, Tr. 259:17 – 259:19; and that there was no record of her ever telling the government about the threats. Tr. 291:22 – 292:11. In short, she lied about the death threats and those lies are evidence of her bias for the government, from which she hopes to get a visa to remain in the United States. Tr. 241:12 – 241:22. As such, her testimony about Mr. Perez's status, influence and capabilities as a narco-trafficker are highly suspect and should be disregarded.

## II. The Evidence Does Not Support a Role Enhancement

First, the evidence demonstrates that Mr. Perez worked under Chubas as a broker who acted as an intermediary for a drug deal between Chubas and Chacon Rossell. In the intercepted Blackberry messages, Mr. Perez was deferential to Chubas, calling him "sir," and communicated with Chubas to let him know what Mr. Perez was doing, whom he was meeting with and to seek authority to act. This is borne out by the fact that in many of the chats between Chubas and Mr. Perez, Mr. Perez is giving updates to Chubas and getting instructions from Chubas on how or whether to proceed.

For example, on January 20, 2014, the following exchange took place between Mr. Perez and Chubas:

| | |
|---|---|
| Mr. Perez: | Sir tomorrow at 3pm I have a meeting with the lady |
| Chubas: | I'll leave it to you if you're able to arrange a relationship |
| Mr. Perez: | If she were willing to front us 1 whole one do I grab it? |
| Chubas: | If they front you 2 grab them both we'll support each other here |
| Mr. Perez: | Ok sir then with that tomorrow when I'm in the meeting if I need to ask you anything I will call you sir |

Gov. Exh. 6.

On January 22, 2014, the following exchange took place between Mr. Perez and Chubas:

| | |
|---|---|
| Mr. Perez: | Sir your guys already picked up 590 just so you are aware |

***

| | |
|---|---|
| Mr. Perez: | I will be reporting to you sir |

Gov. Exh. 7.

On January 22, 2014, the following exchange took place between Mr. Perez and Chubas:

12

| | |
|---|---|
| Mr. Perez: | "Sir I'm here talking to the lady she says she is going to be ready in about 5 days from now she's also telling me that she's going to give us a good price but she'll tell me the exact # the day the product arrives only she's leading me to understand that we would buy 1 from her and she'll give me another[;] one cash up front and the other a couple of days later what do you think? |
| Chubas: | That seems fine to me my buddy go ahead |

Gov. Exh. 8.

On February 3, 2014, Mr. Perez asks Chubas, "One question sir you know more than I do and you have more friendships is there nothing right now in guate[mala]." Gov. Exh. 15.

On February 11, 2014, the following exchange took place between Mr. Perez and Chubas:

| | |
|---|---|
| Mr. Perez: | I'm going to send you a conversation so that you can see that everything is 100[%] sir |
| | *** |
| Chubas: | That's it my buddy that's great go ahead |

Gov. Exh 20.

On February 15, 2014, the following exchange took place between Mr. Perez and Chubas:

| | |
|---|---|
| Mr. Perez: | What do you think of the lady's answer sir |
| Chubas: | Very good my buddy go ahead |

Gov. Exh. 24.

First, these and other exchanges between Mr. Perez and Limon demonstrate that Mr. Perez is a subordinate of Chubas and is consistently asking Chubas what he thinks, whether Mr. Perez should proceed and seeking Chubas' authorization. The exchanges do not present any evidence that Mr. Perez independently supervises anyone, but rather that he is an intermediary for Chubas in negotiating a deal with Chacon Rossell.

13

Second, the Los Angeles seizures that the government will argue demonstrate Mr. Perez's leadership role do not coincide with the alleged seizures that Mr. Perez mentioned to Chacon Rossell during their meeting in Guatemala. According to Chacon Rossell, Mr. Perez told her that three offices in Los Angeles were seized and that Mr. Perez had mentioned a loss of 400 kilos and $3,000,000 as a result of those seizures. Tr. 206:13 – 207:10; Tr. 270:24 – 271:15. According to Special Agent Dvorsky's testimony, the Los Angeles area seizures resulted in the recovery of 74 kilos of cocaine and $1.4 million on February 17, 2014. Tr. 62:24 – 63:4.

Had Mr. Perez had a leadership role and the Los Angeles offices been his, he would have known exactly how much cocaine and money the seizures cost him. As Rossell Chacon testified, a leader would be well-aware of any seizures that occurred at any of his offices. Tr. 271:16 – 271:20. Additionally, Special Agent Dvorsky testified that she was not aware of any connection between Mr. Perez and the seizures beyond the fact that Mr. Perez had shared with Chubas a telephone number for a person arrested in relation to the seizures.

> Q. During the San Bernardino seizures or investigations, are you aware of any evidence that was found linking those -- that seizure of the money and the cocaine to Mr. Perez?
> A. No.

Tr. 121:7 – 121:10, and:

> Q. You're not aware of any other evidence indicating that Mr. Perez had any connection to that California group, let's say, absent his providing the number to Chubas; right?
> A. Correct.

Tr. 135:3 – 135:13. Further indication that Mr. Perez had no connection to the seizures is the fact that there are no chats between Mr. Perez and Chubas or anyone else discussing the alleged seizures. Had the seizures been related to Mr. Perez, it is evident that Mr. Perez would have at a minimum discussed them with Chubas.

14

Third, on February 22, 2014, Mr. Perez was arrested by Guatemalan law enforcement as the driver of a cargo truck carrying 500 kilos of cocaine. It stands to reason that if Mr. Perez was a manager or supervisor, let alone a leader or organizer, he would not have been personally transporting the cocaine. Special Agent Dvorsky testified that in her experience, a high-level person within a drug organization does not drive their own drugs. Tr. 123:19 – 123:23. Additionally, Chacon Rossell testified that Mr. Perez wanted the kilos of cocaine without a wrapper so that he could check/count them one by one. Tr. 210:21 – 211:7; 272:1 – 272:4. She also testified that as a major trafficker she never counted each kilo one by one. 272:18 – 272:20. Finally, she testified that that in her experience as a major drug trafficker she never personally transported drugs. Tr. 272:14 – 272:17.

Fourth, the Meisel email (Def. Exh. 20) and McGuire Affidavit (Def. Exh. 21) both describe Mr. Perez as a "broker," not as a manager/organizer or leader/supervisor. The email and affidavit make clear the government's true assessment of Mr. Perez' role in the offense.

### III. The Guidelines Do Not Support a Role Enhancement

According to the Sentencing Guidelines, factors that should be considered in distinguishing between role categories include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.4 cmt. 4.

Here, there is ample evidence that Mr. Perez did not exercise great decision-making authority. This is evidenced by the chats between him and Chubas that demonstrate that

he worked for Chubas and that Chubas made the decisions. Those same chats demonstrate that Mr. Perez was an intermediary between Chubas and his suppliers and that his role in the commission of the offense was limited to negotiating the 500-kilogram deal on behalf of Chubas. Furthermore, the Meisel Email and McGuire Affidavit both concede that Mr. Perez is an intermediary who brokers cocaine deals, in this case between Chubas and Chacon Rossell. There is no evidence that Mr. Perez was involved in the recruitment of accomplices or that he claimed a right to a larger share of the fruits of the crime. As an intermediary, Mr. Perez acted as Chubas' underling and worked at his direction. The nature and scope of the illegal activity was not necessarily extensive and primarily involved negotiations to purchase 500 kilograms of cocaine from Chacon Rossell. Finally, there is no credible evidence that Mr. Perez exercised any degree of control and authority over others.

All these factors point to Mr. Perez being a subordinate of Chubas (and not a manager or supervisor/leader or organizer of others) with limited responsibility such that a role enhancement does not apply. If the enhancement does not apply, Mr. Perez would be eligible for a 2-level reduction under the safety-valve provision of U.S.S.G. § 5C1.2 and a 2-level reduction under U.S.S.G. § 4C1.1 for zero-point offenders[3]. In that case, Mr. Perez's guidelines would be: base offense level 38 minus 2 points for acceptance of responsibility, minus 2 levels for safety valve, minus 2 points for being a zero-point offender, resulting in an adjusted offense level of 32. With a criminal history category of I, the guideline sentencing range would be 121 – 151 months.

---

[3] In the absence of a role enhancement, Mr. Perez meets all the other criteria for a zero-point offender.

**WHEREFORE**, for the foregoing reasons and any others that may become apparent to the Court, Mr. Perez respectfully requests that the government's motion for a role enhancement be **DENIED**.

Dated: Washington, DC
       August 14, 2024

**BALAREZO LAW**

By: /s/ A. Eduardo Balarezo
_____
A. Eduardo Balarezo, Esq.
DC Bar # 462659
400 Fifth Street, NW
Suite 300
Washington, DC 20004
Tel. (202) 639-0999
Fax. (202) 639-0899
E-mail: aeb@balarezolaw.com

*Counsel for Jorge Perez Cazares*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August 2024, I caused a true and correct copy of the foregoing Defendant's Opposition to Government's Motion for Guideline Role Enhancement to be delivered to the Parties in this case via Electronic Case Filing.

/s/ A. Eduardo Balarezo
_____
A. Eduardo Balarezo, Esq.